### In re GILSONITE MINES CO.

#### (District Court, M. D. Pennsylvania. August, 1916.)

1. BANKRUPTCY ⊂⊃200(3)—ADJUDICATION—EFFECT OF.

Under Bankr. Act, July 1, 1898, c. 541, § 67c, 30 Stat. 564 (Comp. St. 1913, § 9651), a pending attachment secured within four months of the bankrupt's adjudication is dissolved, and the lien discharged and released, by reason of the adjudication; the property passing to the trustee as part of the estate of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 206–300; Dec. Dig. ⊂⊃200(3).]

2. BANKRUPTCY ⊂⊃205—ATTACHMENTS—DISCHARGE—ESTOPPEL.

Within four months of adjudication, corporate stock belonging to the bankrupt was attached. After adjudication, the trustee and attaching creditors entered into negotiations, which continued until the attaching creditors obtained a judgment in the attachment proceedings, whereupon they levied on the stock and advertised it for sale. During the negotiations there was no denial of the right of the trustee to the stock, or refusal to deliver it, but rather a failure to do so for want of proper authority on the part of the creditors. *Held*, that as the lien of the attachment was dissolved, under Bankr. Act, § 67c, the right of the trustee to claim the stock cannot be denied on the theory that, as he allowed the creditors to persist in their action, he was estopped to deny their right, for that would open the door to fraud on the part of the trustee, and the creditors persisted in their action with knowledge of the adjudication and the rights of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 234, 303; Dec. Dig. ⊂⊃205.]

In Bankruptcy. In the matter of the Gilsonite Mines Company. Application by the trustee in bankruptcy for an order on the executors

of F. G. Yorks, deceased, and another, requiring them to deliver to the trustee a certificate for shares of the capital stock of another corporation. On motion for judgment on petition and answer. Motion denied, and respondents directed to deliver stock.

L. J. Stark, of Denver, Colo., and H. R. Van Deusen, of Scranton, Pa., for trustee.

. Fred Ikeler, of Bloomsburg, Pa., for respondents.

WITMER, District Judge. This is an application by the trustee in bankruptcy for an order on the executors of F. G. Yorks, deceased, and B. F. Rice, sheriff of Columbia county, Pa., requiring them to deliver to the trustee a certain certificate for 12,000 shares of the capital stock of the Castle Peak Asphalt Mining Company. The matter is for determination on petition and answer.

. It appears that the Gilsonite Mines Company is a corporation organized under laws of the state of Wyoming, and that during the year 1914 M. K. Yorks, of Bloomsburg, Pa., was its secretary and treasurer; that on July 6, 1914, the said M. K. Yorks and others, executors of the estate of F. K. Yorks, deceased, brought an action in the court of common pleas of Columbia county against the Gilsonite Mines Company, and a writ of foreign attachment was issued, attaching this stock of the Castle Peak Asphalt Mining Company, being the property of the Mines Company in the possession of its treasurer. The attachment was levied on July 9, 1914, and on November 3, 1914, the company was adjudicated a bankrupt in the United States District Court for the State of Wyoming, and the petitioner was chosen trustee. Barring all that has been said by counsel about the negotiations following, having in view the delivery of this stock to the trustee, it has been made to appear that the trustee made demand for it on the sheriff and on counsel for trustee during the latter part of the year, or the beginning of 1915, and that in the correspondence that followed there was no denial of his right to it, nor refusal on their part to deliver same—rather a failure to do so for want of proper authority or direction to turn over. The matter was allowed to drag along for reasons that are not fully disclosed, when finally the respondents persisting in the attachment proceedings obtained judgment, whereupon they levied the stock and advertised it for sale. On petition this rule to turn over was granted and the sale restrained.

[1, 2] The position of the respondents is anomalous. They do not deny the legal title and ownership of the bankrupt to the stock, but they assert that by reason of the long-continued delay of the trustee, and especially his failure to assert his right to the stock gave the respondents reason to believe that he did not intend to press his claim for it, thereby encouraging them to spend large sums of money in the prosecution of their suit, wherefor the trustee is now equitably estopped from his right to such stock, or from interfering with the respondents in making sale thereof under their writ of execution. This position is untenable, since by section 67c of the Bankruptcy Act the pending attachment was dissolved, and the lien, secured within four months

of the bankrupt's adjudication, was wholly discharged and released, passing the property to the trustee so freed as a part of the estate of the bankrupt, and, having been invested with such tentative or constructive title to this property, the trustee, representing the creditors and the court, can be divested only by a sale thereof under order of court, or by a disclaimer filed with its consent.

To affirm the doctrine advanced would tend to assist a dishonest trustee in bankruptcy to do by indirection what he would not be permitted to do directly—to abandon the bankrupt's property to the injury of creditors and to the advantage of the bankrupt and others. Then, again, even if the trustee had not elected to take this property earlier, why should he be prevented from reducing it to possession now? Title to it having vested in him freed from the lien of the attaching creditor, it remains in him now, notwithstanding the effort to divest it by a proceeding dissolved by operation of the Bankruptcy Law. Finally, the estoppel advanced against the trustee does not come with force from the respondents. Whatever they did, since the demand by the trustee for the stock in suit, was with knowledge of the pending bankruptcy proceedings and the attempt to secure at long range its possession. Having failed in their effort, their complaint will not avail them. The respondents are required to turn over on demand to the trustee or his authorized attorney the 12,000 shares of the capital stock of the Castle Peak Asphalt Mining Company in their possession.

The motion for judgment is denied.